CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

DEC 0 7 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **WILLIAM WHITE, JR.,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:07-cv-00242** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **D.A. BRAXTON, et al.,** | ) | **By: Hon. Glen E. Conrad** |
| **Defendants.** | ) | **United States District Judge** |

Plaintiff William White, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. §1343. Plaintiff seeks declaratory, monetary, and injunctive relief. Defendants have filed a motion for summary judgment, plaintiff has responded, and the complaint is now ripe for the court's review. For the reasons that follow, the court will grant summary judgment in favor of the defendants.[1]

## I. Factual Summary

Plaintiff is presently incarcerated at Red Onion State Prison ("ROSP"). He alleges a number of claims pertaining to the conditions of his confinement, and sues D. A. Braxton, ROSP Warden from June 4, 2001 to November 14, 2004, and Tracy S. Ray, current ROSP Warden. Plaintiff first alleges a claim of deliberate indifference to his mental health treatment. Plaintiff claims that he has experienced "numerous psychological injuries" including "hearing voices, being touched and attacked by unknown things in his cell[,] being unable to control his speech and thoughts[,] slight loss of memory," "seeing visions," and various other hallucinations. (Compl. at 23, paragraph D.) Plaintiff contends that he was diagnosed with several psychological disorders prior to his incarceration and that these disorders have worsened during his time at ROSP because he has "received little to no health care treatment." (Compl.

---

[1] Plaintiff filed a second motion to appoint counsel on November 16, 2007, which this court will construe as a motion for reconsideration. Plaintiff's first motion was denied by Order entered September 24, 2007. Having reviewed plaintiff's motion and pertinent portions of the record, the court remains convinced that his request was properly denied. Accordingly, plaintiff's motion for reconsideration will be denied.

at 24, paragraph E.) Plaintiff specifically points to an incident on November 30, 2003, as support for his claim that he was denied proper mental care at ROSP. Plaintiff alleges that he had a "psychotic episode" where he placed a sign in his cell window with a picture of a penis on it that said, "break in case of emergency," emptied his consumable commissary items into his toilet, and completely disrobed. (Am. Compl. at 3, paragraph B.) Plaintiff alleges that he was escorted to the mental health unit but that he was denied "basic hygiene needs" such as a toothbrush, that the staff made "unprofessional" and threatening comments towards him, that he was placed on a "diet loaf" and denied water, and that he was denied the use of a bathroom. (Am. Compl. at 3, paragraph B.)

Plaintiff also points to a January 7, 2004 incident as support for his claim. Plaintiff alleges that he experienced a psychotic episode which began with him hearing voices and culminated in plaintiff urinating on his dinner tray and smearing his feces in the cell tray slot "in an attempt to get mental health professionals to help him." (Compl. at 29-30, paragraph B.) Plaintiff contends that, as a result of his actions, his was placed in restraints and left in an empty cell until January 9, 2004. Plaintiff admits that he was provided with meals during that time. Plaintiff alleges that he was in an extreme amount of pain during this time period and that he eventually began to see a "small talking face" on his cell wall and a "two inch thick haze" on his cell floor. (Compl. at 32.) Plaintiff was taken to a regular cell on January 10, 2004, where he proceeded to detach the ceiling sprinkler, causing the cell to become covered in water. Plaintiff alleges that he was again restrained and left in this wet and cold cell with no blanket, mattress, or clothes. Plaintiff alleges that he remained in that cell until January 12, 2004, and that he again began hallucinating during that time period. Plaintiff claims that he "suffered from superficial scares [sic] around his wrists and ankles," "back, neck, and stomach problems," and "psychological injuries" as a result of these incidents. (Compl. at 35.) Plaintiff further alleges that he was examined by a ROSP mental health professional on January 13, 2004, and that the physician, Dr. Ashtin, laughed at plaintiff and

refused to give him prescribed medication or change his feeding restrictions. Plaintiff finally alleges that he attempted suicide in November of 2004 by over-dosing on aspirin that he purchased at the commissary.

Plaintiff also complains of deliberate indifference to several allegedly serious medical needs. Plaintiff first complains of "scabies" on his penis and contends that the medication prescribed by prison physicians resulted in the "disease" "spread[ing] over the plaintiff's penis." (Compl. at 11, paragraph E.) Plaintiff contends that, despite medication provided by ROSP medical staff, he has been left with "visible signs of this disease or diseases." (Compl. at 12, paragraph F.) In his amended complaint, plaintiff specifies that he was "forced to cut himself on his penis as the result of an irresistible impulse and voices." (Am. Compl. at 6, paragraph D.) Plaintiff contends that he was attempting to remove the "disease" from his penis. (Am. Compl. at 7, paragraph E.) Plaintiff alleges that the nursing staff refused to allow him to see a physician on numerous occasions and that three different physicians failed to diagnose and treat his problem properly.

Plaintiff also alleges that he has received inadequate medical care for a damaged gold crown on a front tooth. Plaintiff complains that one of his gold crowns was loosened after an assault at Powhatan Correctional Center. Plaintiff was examined by the ROSP dentist on December 29, 2003, and admits that the dentist applied a "new dental bond" to the crown, but contends that the dentist damaged his crown leaving it "misshappened [sic] and dented." (Compl. at 13, paragraph B.) Plaintiff admits that he did not receive any "physical injuries" from the dentist's actions. (Compl. at 13, paragraph D.) Plaintiff attempts to excuse his late filing of this suit against ROSP for damage to his crown by alleging that he was unaware that ROSP could be held responsible for the damaged crown. He requests that the gold crown be "fixed" by an "outside dentist" and returned to ROSP for insertion and that he be provided with a "jewelry cloth"

3

for the "maintenance of his [ten] gold crowns." (Mot. to Am. the Am. Compl. at 1; Pl. Aff. at 41.)[2]

Plaintiff also alleges claims of excessive force and subsequent denial of medical treatment arising from incidents on December 4, 2003, and April 4, 2004. Plaintiff alleges that on December 4, 2003, he was assaulted by several officers as he was being escorted from "Medical Cell 2 to Cell D6-611." (Pl. Aff. at 50.) He contends that he was choked and punched by Officer Long and Boyd at the instruction of Major Fleming. He alleges that Officer Boyd "punched [him] quite a number of times in the stomach" and that Officer Long "hit [him] in the head" and "placed [him] in a chokehold for approx[imately]" thirty to forty-five seconds. (Pl. Aff. at 52.) Plaintiff does not contend that he requested medical attention or specify in his complaint any medical treatment that he received subsequent to the incident. Plaintiff further alleges that he was denied medical attention after an assault by several officers on April 4, 2004. Plaintiff contends that, as a result of the assault, he received facial abrasions, bruised ribs, and a swollen eye, experienced difficulty breathing and swallowing, and that he bears scars from these injuries on his knees and legs. Plaintiff alleges that an unidentified nurse approached him that same evening and asked whether he needed medical attention to which he replied in the affirmative. Plaintiff alleges that the nurse then stated, "No, you don't. You're O.K.!" and walked away. (Compl. at 41.) Plaintiff alleges that an officer refused to properly submit his emergency grievance and that plaintiff's many requests for medical treatment were ignored.

Plaintiff further complains of unsanitary food preparation and delivery. He specifically contends

---

[2] Plaintiff contends in an affidavit filed with the court on September 24, 2007, that his gums are currently "swollen and bleeding" due to the fact that he has not seen a dentist in six months for a cleaning. (Pl. Aff. at 38.) Plaintiff alleges that he requires an antibiotic to combat his sensitive gums. The United State Court of Appeals for the Fourth Circuit has held that an amended complaint relates back to the original complaint if there is a factual nexus. Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983). Plaintiff's claim was filed well after the filing of this lawsuit in May of 2007 and does not relate back to any claim filed in his original or amended complaint. While both claims involve dental problems, plaintiff does not contend that his current condition is due to his damaged crown. At any rate, his grievances attempting to exhaust this issue were filed subsequent to the original complaint. Accordingly, the court will not grant an amendment to plaintiff's complaint and will not consider this claim.

4

that he has found numerous foreign objects on his food trays and that the food at ROSP lacks "nutritional value" and is not served in proper "portions." (Compl. at 16, paragraph B.) He also complains that his "dietary supplement" or loaf is insufficient. (Compl. at 17, paragraph B.) Plaintiff contends that he has been placed on the diet loaf numerous times and that he has passed out on several occasions due to the lack of nutrition of the prescribed "dietary supplement" and his refusal to eat the loaf. (Am. Compl. at 9, paragraph I.) He alleges that he should not be provided with a "vegetarian diet loaf" as he is not a vegetarian and the loaf "looks like a large 'cow dung patti' from the outside and looks and smells like dog food on the inside." (Pl. Aff. at 62.)

Plaintiff also complains of his extended incarceration in the segregation unit. Plaintiff contends that he has been left on segregation status for four years and ten months, and that this poses an "atypical [and] significant hardship" for him. (Compl. at 17, paragraph B.) He complains that he was denied consumable commissary items and a color television/radio prior to 2006. He further complains that he currently is "not given the option of any black alternative radio stations" because of the radio antenna on his television and that he is only allowed to order ten commissary items per week. (Pl. Resp. Mot. Summ. J. at 14.) Plaintiff further alleges that he has experienced "numerous health problems" due to his confinement in segregation and the "lack of proper indoor [and] outdoor exercise." (Compl. at 22.) Specifically, plaintiff contends that he suffers from muscles "beginning to 'atrophy,' sever[e] weight loss, stomach problems, back and neck problems, shoulder, neck, and wrist problems[,] leg and feet problems," and muscle spasms. (Compl. at 22.) Plaintiff admits that he is allowed outdoor recreation but contends that this is not "proper outdoor exercise" because "the conditions of [the] recreation area are often worst [sic] then [sic] the conditions" in his cell and are "psychologically detrimental." (Pl. Resp. Mot. Summ. J. at 7, 9.) Plaintiff requests that the court grant plaintiff the "right to own [and] possess his own personal footwear" and more room to exercise. (Am. Compl., Attach. 3 at 7.) Moreover, plaintiff complains that

5

he has been denied due process because his "I.C.A. hearings" concerning his confinement in the segregation unit have not occurred pursuant to ROSP guidelines and have not been filed in a timely fashion. (Compl. at 22.)

Finally, plaintiff generally complains of "cold cells, wet cells, cells with no running water," and cells where he experienced "problems with homosexual advances" from other inmates and "irate inmates." (Compl. at 15, paragraph B.)

Wardens Braxton and Ray contend that most of plaintiff's claims are unexhausted. As to plaintiff's dental and medical claims, they submit in their affidavits that ROSP employs trained professionals to provide inmates with quality medical and dental care. These health care providers evaluate the inmate's complaint and determine the necessary treatment. Decisions and actions regarding the health care services provided to inmate are the sole responsibility of qualified health care personnel and their opinions are relied upon by the administrative staff. Warden Braxton and Warden Ray both contend that they never had any personal involvement in rendering care to plaintiff. However, they claim that they were not indifferent or apathetic toward plaintiff's needs, nor did they prohibit him from seeking medical attention.

## II. Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions. See 42 U.S.C. § 1997e(a) (requiring that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); see also Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002) (citing Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to exhaust even if the inmate demonstrates

6

that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit)). There is no doubt that the PLRA's exhaustion requirement is mandatory. Woodford v. Ngo, 548 U.S. ___, 126 S. Ct. 2378 (2006); Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005). In the instant action, plaintiff failed to fully exhaust the grievance procedures available to him at ROSP concerning his claims of mental health treatment, excessive force, unsanitary and insufficient food, uncomfortable cell conditions, and his segregation status.

Plaintiff, as a Virginia inmate, is required to exhaust the claims raised in the instant complaint in accordance with the grievance procedures established by the Virginia Department of Corrections ("VDOC"). In particular, he must comply with Division Operating Procedure ("DOP") 866, which provides multiple levels of administrative remedies in the form of inmate grievances. DOP 866 requires that, prior to submitting a regular grievance, the inmate should demonstrate that he has made a good faith attempt to informally resolve the complaint by filing an informal complaint form to the appropriate department head. Prison officials must respond in writing to the inmate's complaint within fifteen days of receiving an informal complaint to ensure that the informal responses are provided prior to the expiration of the thirty day time period in which an inmate may file his regular grievance. Responses must be made in writing with the reasons for the response stated clearly. Prisoners at ROSP are required to attach their informal complaint to their regular grievance. Once a regular grievance has been denied, there are generally two levels of review available. Level I reviews are conducted by the Warden or Superintendent of the facility. If the inmate is dissatisfied with that determination, he may appeal the determination to Level II. Level II responses are conducted by the Regional Director, Health Services Director, or Chief of Operations for Classification and Records. For most issues, Level II is the final level of review. The time-limit for issuing a Level I response is thirty days and the time-limit for a Level II response is twenty days. Expiration of the time-limit without issuance of a response at any stage of the

7

process automatically qualifies the grievance for appeal to the next level of review. Notification of an inmate's appeal rights is indicated in the response form at each level of the decision making process. Those grievances that do not meet the filing requirements of DOP 866 are returned to the inmate within two working days from the date of receipt noting the reason for the return on the intake section of the grievance form. The inmate is instructed how to remedy any problems with the grievance when feasible.

According to the affidavit of F. Taylor, ROSP Institutional Ombudsman, the grievance department has accepted and issued log numbers for only four regular grievances from plaintiff. However, plaintiff submitted several grievances which were returned to him for various reasons.

On August 23, 2004, the grievance department received a grievance from plaintiff concerning his attempts to receive mental health medication. He alleged that he had written the Qualified Mental Health Professional ("QMHP") over fifty times, but that he had not been examined by a physician and had not received his medication. On August 23, 2004, this grievance was returned to plaintiff for providing insufficient information. Plaintiff was advised to provide the dates that the QMHP had failed to respond, but he did not resubmit his grievance with this information or appeal the intake decision.

On November 15, 2005, plaintiff submitted a regular grievance concerning his denial of release from segregation after an ICA hearing. In that grievance, plaintiff alleged that he had filed an informal complaint concerning the issue, but that he was told to file a regular grievance with a copy of his ICA hearing form attached. Plaintiff did not attach copies of his informal complaint or his ICA hearing form to his grievance, thus, his grievance was returned to him on November 16, 2005, for failure to use the informal grievance process to resolve his complaint. Plaintiff did not resubmit his grievance with the requisite copies attached, nor did he appeal the intake decision.

On March 22, 2006, plaintiff submitted a regular grievance regarding his long-term segregation status and complaints about outdoor exercise opportunities. On March 24, 2006, the grievance was

8

returned to him for failure to use the informal grievance process. On March 27, 2006, plaintiff filed another regular grievance concerning this issue in which he stated that he had attached his informal complaint to the grievance. On March 30, 2006, plaintiff resubmitted the March 22, 2006 grievance with a copy of his informal complaint filed on February 28, 2006. That same day the grievance was again returned for failure to provide sufficient information such as dates of the alleged injury or names of officers who denied him recreation opportunities. The March 27, 2006 grievance was returned for the same reason. Plaintiff did not resubmit these grievances with the requested information, nor did he appeal the intake decisions.

On May 31, 2006, plaintiff submitted a regular grievance concerning his alleged denial of mental health treatment at ROSP. In that grievance he alleged that he was hearing voices, being touched in his sleep, and hallucinating. He requested immediate mental health care. On June 2, 2006, this grievance was returned to him as it was a request for services, rather than a grievance. Plaintiff did not appeal this intake decision.

On October 25, 2006, plaintiff submitted a regular grievance concerning unsanitary food preparation and service. On October 27, 2006, the grievance was returned to him for providing insufficient information. He was advised to resubmit his grievance using only one form to state his complaint. He was also advised that his informal complaint forms attached to his regular grievance were not related to food issues at all. Plaintiff did not resubmit this grievance or appeal the intake decision, but filed another regular grievance regarding the same issue on October 31, 2006. He again failed to attach the proper informal complaint forms and the grievance was returned to him for failure to comply with the informal grievance process. Plaintiff did not attempt to resubmit this grievance and he did not appeal the intake decision.

Furthermore, Taylor indicates in her affidavit that, based on her review of plaintiff's file, it does

9

not appear that he submitted any regular grievances on the following issues: general housing complaints, food restrictions and lack of nutrition, and segregation radio, television, and commissary concerns. Moreover, the court notes that plaintiff did not submit any regular grievances concerning his claims of excessive force or subsequent denial of medical care.

Accordingly, as plaintiff failed to exhaust his administrative remedies as to his claims concerning mental health care, excessive force, food service and sufficiency, his segregation status and accompanying complaints, and general housing complaints, those claims must be dismissed pursuant to 42 U.S.C. § 1997e(a). Defendants appear to admit, however, that plaintiff fully exhausted claims concerning his dental and medical care.[3,4]

Warden Ray contends that on March 20, 2006, the ROSP grievance department received a regular grievance from plaintiff in which he complained that a gold crown on his front tooth was damaged by an ROSP dentist on December 29, 2003. Warden Ray provided the Level I response on April 20, 2006, noting that plaintiff had been examined on March 20, 2006, and that his problem had been resolved. Warden Ray reviewed plaintiff's dental records and confirmed that plaintiff had been examined by a dentist on December 29, 2003, and that a loose crown was re-cemented by the dentist on that date. When plaintiff was examined by the dentist on March 20, 2006, it was regarding a wisdom tooth. Plaintiff did not voice any complaints about a damaged crown at that time. Warden Ray advised plaintiff that if he had

---

[3] The court notes that, although plaintiff submitted hundreds of repetitious pages of inmate request for information forms and emergency grievances, he failed to utilize proper grievance procedures in all but two of his claims. An emergency grievance "does not satisfy the exhaustion requirement." DOP 866-4.0.

[4] Plaintiff admits that "D.O.P. policy states that intake decisions can be appealed," but contends that he was "never told how to appeal the intake [grievance] decisions." (Pl. Aff. at 3.) He alleges that this information had to be specifically requested and that he requested the information on May 23, 2007. The court finds plaintiff's claim that he was unaware of how to appeal grievances until 2007 incredible as he filed Level I and II appeals concerning several medical issues in 2006. Furthermore, according to Taylor, inmates are oriented to the Inmate Grievance Procedure when they are received into the VDOC and instructions for appeal are noted on each response form. Plaintiff further alleges that he attempted to exhaust several of his unexhausted claims after he filed his complaint in this action; however, these claims must be dismissed for failure to exhaust. See Dixon, 291 F.3d 485 (7th Cir. 2002).

dental problems which had not been addressed, he should request to see the dentist again. Accordingly, Warden Ray determined plaintiff's grievance to be unfounded. Fred Schilling, VDOC Health Services Director, provided the Level II response on May 26, 2006, restating Warden Ray's analysis and adding that White had failed to provide any evidence that the ROSP dentist had damaged his crown.

With respect to plaintiff's complaint that the ROSP medical department failed to treat an infectious disease on his penis, Warden Ray indicates in his affidavit that the ROSP grievance department received a regular grievance from plaintiff concerning this issue on October 30, 2006. Warden Ray provided the Level I response to this grievance on November 20, 2006, noting that Dr. Ohai did not diagnose plaintiff with "scabies" as plaintiff contended and that, therefore, he was not entitled to treatment for scabies. Plaintiff's medical records revealed that he was diagnosed with penile warts[5] on November 1, 2006, and treated in the medical department on November 3, 2006. When he was seen and treated on November 3, 2006, there were only two papules present. It "appeared that the medical assessment and care provided to White was adequate and that there was no need for an outside consultation." (Br. Supp. Mot. Summ. J., Ex. III at 4.) Fred Schilling provided the Level II response on December 6, 2006, also determining the grievance to be unfounded.

### III. Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential

---

[5] Genital warts are the result of a sexually transmitted viral infection. Left untreated, they may cause itching, irritation, or bleeding. American Medical Association, Complete Medical Encyclopedia 394 (2003).

Case 7:07-cv-00242-GEC-mfu   Document 29   Filed 12/07/07   Page 11 of 15   Pageid#: 921

to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## IV. Analysis

In order to state a claim under § 1983, plaintiff must allege facts sufficient to establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Having reviewed the plaintiff's allegations, the court concludes that he has failed to state a claim of constitutional magnitude against either of the named defendants.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Disagreements between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment are not cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985);

Case 7:07-cv-00242-GEC-mfu    Document 29    Filed 12/07/07    Page 12 of 15    Pageid#: 922

Estelle, 429 U.S. at 105-06.  Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable."  Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

To bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison physician's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990).  Furthermore, a defendant who occupies a supervisory position may not be held liable merely under a theory of respondeat superior in a § 1983 action.  See Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-92 (1978); Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence).

Applying these principles, and taking plaintiff's allegations in the light most favorable to him, the court concludes that they are insufficient to state claims under § 1983.  Plaintiff fails to allege and the record does not support that either Warden Braxton or Warden Ray were personally connected with the alleged denial of treatment.  Plaintiff does not allege that they intentionally delayed or denied his access to medical care nor does he contend that they were indifferent or authorized any alleged misconduct. Supervisory officials such as the wardens are entitled to rely on the medical judgment made by prison medical staff.  See Miltier, 896 F.2d at 854.

Furthermore, plaintiff's claims fail for other reasons as well.  First, plaintiff's claim as to his damaged crown is barred by the statute of limitations.  Since there is no federal statute of limitations for § 1983 actions, state statutes governing personal injury apply to all § 1983 claims.  Owens v. Okure, 488 U.S. 235, 239-40 (1989); Wilson v. Garcia, 471 U.S. 261, 266 (1985).  Virginia has a two-year statute of limitations for general personal injury claims.  Va. Code Ann. § 8.01-243(a); see also Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir. 1983) (finding that Virginia's two-year statute of limitations for

13

personal injury cases applies in civil rights actions against federal officials). Therefore, a plaintiff bringing a civil rights action under § 1983 in Virginia must do so within two years from the time when his action accrues. The question of when a cause of action accrues is a federal question, not resolved by reference to state law. Wallace v. Kato, 549 U.S. ___, 127 S. Ct. 1091, 1095 (2007). Under federal law, plaintiff's cause of action under § 1983 accrues when he "can file suit and obtain relief." Id. at 1095 (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201(1997)); see also Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir.1995) (en banc) (holding that a cause of action under § 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action"). There is no doubt that plaintiff's cause of action accrued when the alleged damage to his crown occurred, on December 29, 2003. Accordingly, the statute of limitations expired on December 29, 2005, and plaintiff did not file this action until May 11, 2007. Under these principles, it is clear that plaintiff's claim is barred by the applicable, two-year statute of limitations. Accordingly, the court concludes that his claims are now barred under Virginia Code § 8.01-243(a).[6]

Moreover, plaintiff has not made any showing that a constitutional right has been violated in relation to the merits of his claim concerning his genital warts. Although he may believe that the ROSP medical staff were deliberately indifferent to his medical needs by failing to properly treat his genital warts, such actions do not rise to the level of a federal constitutional violation. Inasmuch as plaintiff's own complaint and attachments demonstrate that his claim amounts to a mere disagreement between an inmate and medical personnel over his diagnosis and subsequent treatment, his claim would arise, if at all, under state medical malpractice laws, and does not present a colorable claim under § 1983. See Estelle, 429 U.S. at 105-106; Wright, 766 F.2d at 849; see also Anderson v. Pennsylvania, 196 Fed.

---

[6] Plaintiff does not claim that he did not discover the alleged damage to his crown in December of 2003, merely that he was not aware that ROSP could be held liable for the damage until recently.

App'x 115, 118 (3rd Cir. 2006) (finding that where an inmate claimed that he suffered from scabies and disagreed with prison physician's diagnosis of genital warts, and he received treatment for the condition, this was a mere disagreement with the physician and did not state a claim under the Eighth Amendment); Anderson v. Snyder, 187 Fed. App'x 217, 218 (3rd Cir. 2006) (finding that inmate complaining that prison physician misdiagnosed his genital warts failed to allege any claim that would rise to the level of a constitutional violation).

Accordingly, the court finds that plaintiff has failed to state a claim under the Eighth Amendment because he has not shown that institutional or medical staff were deliberately indifferent to any serious medical need or any other substantial risk of serious harm. Farmer, 511 U.S at 833.

## V. Conclusion

Based on the foregoing, the court finds that plaintiff has not presented any claims on which relief can be granted. Therefore, the court will grant defendants' motion for summary judgment and dismiss the complaint.

Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within thirty days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

**ENTER**: This _____ day of December, 2007.

_____
United States District Judge

15